Stephen C. Jensen (SBN 149,894)
steve.jensen@knobbe.com
Joseph F. Jennings (SBN 145,920)
joe.jennings@knobbe.com
Sheila N. Swaroop (SBN 203,476)
sheila.swaroop@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
**FISHER & PAYKEL HEALTHCARE LIMITED**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FISHER & PAYKEL HEALTHCARE LIMITED, a New Zealand corporation | Case No. 2:16-cv-6099 |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | **DEMAND FOR JURY TRIAL** |
| RESMED CORP., a Minnesota corporation, | |
| Defendant. | |

Plaintiff Fisher & Paykel Healthcare Limited ("Plaintiff" or "Fisher & Paykel Healthcare") hereby complains of Defendant ResMed Corp. ("Defendant" or "ResMed") and alleges as follows:

## I.  **THE PARTIES**

1.     Plaintiff Fisher & Paykel Healthcare Limited is a New Zealand corporation having a principal place of business at 15 Maurice Paykel Place, East Tamaki, Auckland 2013, PO Box 14 348, Panmure, Auckland, New Zealand.

2.     Upon information and belief, Defendant ResMed Corp. is a corporation organized under the laws of the state of Minnesota with its principal place of business at 9001 Spectrum Center Boulevard, San Diego, California.

## II.  **JURISDICTION AND VENUE**

3.     Fisher & Paykel Healthcare repeats, realleges, and incorporates by reference the allegations set forth in Paragraphs 1-2 of this Complaint.

4.     Fisher & Paykel Healthcare Inc. is a California corporation having a principal place of business in this district in Irvine, CA 92618.

5.     With the authorization of Fisher & Paykel Healthcare Limited, Fisher & Paykel Healthcare Inc. sells in the United States products covered by one or more of the patents asserted herein.

6.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, more particularly, 35 U.S.C. §§ 271 and 281.

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     ResMed resides in California and is subject to personal jurisdiction in California, and has committed the acts complained of in this Judicial District.

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b).

### III.  **THE PATENTS-IN-SUIT**

10.     Fisher & Paykel Healthcare Limited is the owner by assignment of U.S. Patent 8,443,807 entitled "Breathing Assistance Apparatus" ("the '807 patent"), which the United States Patent and Trademark Office lawfully and duly issued on May 21, 2013.  A true and correct copy of the '807 patent is attached hereto as Exhibit 1.

11.     Fisher & Paykel Healthcare Limited is the owner by assignment of U.S. Patent 8,479,741 entitled "Breathing Assistance Apparatus" ("the '741 patent"), which the United States Patent and Trademark Office lawfully and duly issued on July 9, 2013.   A true and correct copy of the '741 patent is attached hereto as Exhibit 2.

12.     Fisher & Paykel Healthcare Limited is the owner by assignment of U.S. Patent 8,186,345 entitled "Apparatus for Supplying Gases to a Patient" ("the '345 patent"), which the United States Patent and Trademark Office lawfully and duly issued on May 29, 2012.  A true and correct copy of the '345 patent is attached hereto as Exhibit 3.

13.     Fisher & Paykel Healthcare Limited is the owner by assignment of U.S. Patent 8,453,641 entitled "Apparatus For Measuring Properties of Gases Supplied to a Patient" ("the '641 patent"), which the United States Patent and Trademark Office lawfully and duly issued on June 4, 2013.  A true and correct copy of the '641 patent is attached hereto as Exhibit 4.

14.     Fisher & Paykel Healthcare Limited is the owner by assignment of U.S. Patent 9,265,902 entitled "Apparatus For Measuring Properties of Gases Supplied to a Patient" ("the '902 patent"), which the United States Patent and Trademark Office lawfully and duly issued on February 23, 2016.  A true and correct copy of the '902 patent is attached hereto as Exhibit 5.

15.     Fisher & Paykel Healthcare Limited is the owner by assignment of U.S. Patent 8,550,072 entitled "Apparatus for Delivering Humidified Gases"

("the '072 patent"), which the United States Patent and Trademark Office lawfully and duly issued on October 8, 2013.  A true and correct copy of the '072 patent is attached hereto as Exhibit 6.

16.     Fisher & Paykel Healthcare Limited is the owner by assignment of U.S. Patent 8,091,547 entitled "Apparatus for Delivering Humidified Gases" ("the '547 patent"), which the United States Patent and Trademark Office lawfully and duly issued on January 10, 2012.  A true and correct copy of the '547 patent is attached hereto as Exhibit 7.

17.     Fisher & Paykel Healthcare Limited is the owner by assignment of U.S. Patent 7,111,624 entitled "Apparatus for Delivering Humidified Gases" ("the '624 patent"), which the United States Patent and Trademark Office lawfully and duly issued on September 26, 2006.  A true and correct copy of the '624 patent is attached hereto as Exhibit 8.

18.     Fisher & Paykel Healthcare Limited is the owner by assignment of U.S. Patent 6,398,197 entitled "Water Chamber" ("the '197 patent"), which the United States Patent and Trademark Office lawfully and duly issued on June 4, 2002.  A true and correct copy of the '197 patent is attached hereto as Exhibit 9.

## IV.  <u>DEFENDANTS' ACTIVITIES</u>

19.     Upon information and belief, ResMed has made, used, offered to sell, and/or sold within the United States, and/or has imported into the United States, products including at least Continuous Positive Airway Pressure ("CPAP") machines such as ResMed's AirSense 10 Series, including, without limitation, ResMed AirSense 10 AutoSet, Airsense 10 AutoSet for Her, AirSense 10 CPAP, and AirSense 10 Elite (collectively, "S10 CPAP").

20.     Upon further information and belief, ResMed has made, used, offered to sell, and/or sold within the United States, and/or has imported into the United States, products including at least the AirCurve 10 ASV, AirCurve 10 S, AirCurve 10 VAuto, and AirCurve 10 ST (collectively, "AirCurve 10").

21.    Upon further information and belief, ResMed has made, used, offered to sell, and/or sold within the United States, and/or has imported into the United States, ClimateLineAir heated air tubing for use with at least the S10 CPAP products.

22.    Upon further information and belief, ResMed has made, used, offered to sell, and/or sold within the United States, and/or has imported into the United States, nasal pillow masks, including the Swift FX and the Swift LT masks.

## V.  CLAIMS FOR PATENT INFRINGEMENT

## FIRST CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,443,807)

23.    Fisher & Paykel Healthcare realleges and reincorporates the allegations set forth in paragraphs 1 through 22.

24.    Upon  information and belief, ResMed products, including at least the Swift FX products, infringe at least Claims 1, 2, 4, 6, 8, 17, 20, and 21 of the '807 patent under at least 35 U.S.C. § 271(a), (b), and (c).

25.    Upon information and belief, ResMed has directly infringed one or more claims of the '807 patent through manufacture use, sale, offer for sale, and/or importation into the United States of masks, including the Swift FX masks.

26.    For example, upon information and belief, the Swift FX mask includes all of the limitations of Claim 1 of the '807 patent.  The Swift FX mask is a patient interface that includes a mask assembly with a mask body sized and shaped to leave the mouth of the user uncovered by the mask when in use.  Two nasal pillows extend from the mask body, and in use these nasal pillows rest in a substantially sealed manner against the openings of the nasal cavity of the user. There is a ring engaging the mask body, an elbow rotatably engaged with the ring comprising a plurality of vent holes, a tube or conduit extending from the

elbow, and a headgear assembly having two side straps that pass down the cheeks to secure the mask body to a face of a user. The headgear assembly also includes a top strap with a buckle to facilitate length adjustment of the top strap and a back strap adjustably connected to at least the top strap or the two side straps. The two side straps are configured to connect and disconnect with the mask assembly while the elbow remains rotatably engaged with the ring and the ring remains engaged with the mask body. The mask assembly is configured to connect to the two side straps, and the top strap connects only with one or more of the side straps and the back strap.

27. ResMed is aware of the '807 patent, at least in part through written communications from Fisher & Paykel Healthcare on or about February 27, 2015 notifying ResMed of its infringement of this patent.

28. Upon information and belief, ResMed has actively induced others to infringe the '807 patent by marketing and selling the above masks, knowing and intending that such masks would be used by customers and end users in a manner that infringes the '807 patent. To that end, ResMed provides instructions and teachings to its customers and end users that such masks be used to infringe the '807 patent. ResMed's acts constitute infringement of the '807 patent in violation of 35 U.S.C. § 271(b).

29. Upon information and belief, ResMed actively induces health-care service providers and users to directly infringe the asserted claims of the '807 patent. By way of example only, upon information and belief, ResMed actively induces direct infringement of the '807 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of the Swift FX masks. Upon information and belief, ResMed knew or should have known that these activities would cause direct infringement.

/ / /

- 5 -

30.     Upon information and belief, ResMed's acts constitute contributory infringement of the '807 patent in violation of 35 U.S.C. § 271(c).   Upon information and belief, ResMed contributorily infringes because, among other things, ResMed offers to sell and/or sells within the United States, and/or imports into the United States, components of the Swift FX masks that constitute material parts of the invention of the asserted claims of the '807 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by ResMed to be especially made or especially adapted for use in an infringement of the '807 patent.

31.     Upon information and belief, ResMed's infringement of the '807 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '807 patent and its infringement thereof, thus acting in reckless disregard of Fisher & Paykel Healthcare's patent rights.

32.     As a consequence of ResMed's infringement of the '807 patent, Fisher & Paykel Healthcare has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

33.     Upon information and belief, unless enjoined, ResMed, and/or others acting on behalf of ResMed, will continue their infringing acts, thereby causing additional irreparable injury to Fisher & Paykel Healthcare for which there is no adequate remedy at law.

## **SECOND CLAIM FOR RELIEF**

### **(Infringement of U.S. Patent No. 8,479,741)**

34.     Fisher & Paykel Healthcare realleges and reincorporates the allegations set forth in paragraphs 1 through 33.

/ / /

/ / /

35.   Upon  information and belief, ResMed products, including at least the Swift LT masks, infringe at least Claims 1-3, 16, 17, 34, and 35 of the '741 patent under 35 U.S.C. § 271(a), (b), or (c).

36.   Upon information and belief, ResMed has directly infringed one or more claims of the '741 patent through manufacture use, sale, offer for sale, and/or importation into the United States of the Swift LT masks.

37.   For example, upon information and belief, the Swift LT mask includes all of the limitations of Claim 1 of the '741 patent.  The Swift LT mask is a patient interface that includes a mask body comprising a substantially flexible plastics material and having two nasal pillows angled toward one another.  Each of the nasal pillows has a generally conical portion, a generally cylindrical portion, and an outlet opening.  The mask body also includes an inlet opening that is spaced apart from the outlet openings on the nasal pillows and that is within a generally tubular portion of the mask body.

38.   Upon information and belief, the Swift LT mask also includes a mask base having a plastics material that is less flexible than the plastics material of the mask body.  The mask base has a housing with a through passage, and a proximal portion of the through passage is surrounded by a recess.  The recess receives the generally tubular portion of the mask body that defines the mask body inlet opening.  Two side arms are removably connected to the mask base, and each side arm is three-dimensionally molded and has a varying cross-sectional thickness.

39.   Upon information and belief, the Swift LT mask includes headgear with two side straps of a composite foam material.  Each side arm overlaps with and is secured to one of the side straps, and the side strap extends only partially along the side arm to which it is secured.

/ / /

/ / /

40.     ResMed is aware of the '741 patent, at least in part through written communications from Fisher & Paykel Healthcare on or about February 27, 2015 notifying ResMed of its infringement of this patent.

41.     Upon information and belief, ResMed has actively induced others to infringe the '741 patent.   ResMed's acts constitute infringement of the '741 patent in violation of 35 U.S.C. § 271(b).

42.     Upon information and belief, ResMed actively induces health-care service providers and users to directly infringe the asserted claims of the '741 patent.  By way of example only, upon information and belief, ResMed actively induces direct infringement of the '741 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of the Swift LT masks. Upon information and belief, ResMed knew or should have known that these activities would cause direct infringement.

43.     Upon information and belief, ResMed's acts constitute contributory infringement of the '741 patent in violation of 35 U.S.C. § 271(c).   Upon information and belief, ResMed contributorily infringes because, among other things, ResMed offers to sell and/or sells within the United States, and/or imports into the United States, components of the Swift LT masks that constitute material parts of the invention of the asserted claims of the '741 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by ResMed to be especially made or especially adapted for use in an infringement of the '741 patent.

44.     Upon further information and belief, such components are used by ResMed in connection with the refurbishing, servicing and/or use of infringing Swift LT masks in the United States, thereby constituting direct infringement of the asserted claims of the '741 patent.

/ / /

45.     Upon information and belief, ResMed's infringement of the '741 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '741 patent and its infringement thereof, thus acting in reckless disregard of Fisher & Paykel Healthcare's patent rights.

46.     As a consequence of ResMed's infringement of the '741 patent, Fisher & Paykel Healthcare has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

47.     Upon information and belief, unless enjoined, ResMed, and/or others acting on behalf of ResMed, will continue their infringing acts, thereby causing additional irreparable injury to Fisher & Paykel Healthcare for which there is no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,186,345)

48.     Fisher & Paykel Healthcare realleges and reincorporates the allegations set forth in paragraphs 1 through 47.

49.     Upon  information and belief, ResMed products, including at least the S10 CPAP, AirCurve 10, and ClimateLineAir products, infringe at least Claims 1 and 3 of the '345 patent under 35 U.S.C. § 271(a), (b), or (c).

50.     Upon information and belief, ResMed has directly infringed the asserted claims of the '345 patent through manufacture use, sale, offer for sale, and/or importation into the United States of the S10 CPAP, AirCurve 10, and ClimateLineAir products.

51.     For example, upon information and belief, the AirSense 10 with ClimateLine Air tubing includes all of the limitations of Claim 1 of the '345 patent.  Upon information and belief, the AirSense 10 with Climate Line Air tubing is an apparatus for supplying gases to a patient.  It includes a gases

supply and a tube with a heater wire for heating the conduit.  The heater wire is located around the outside of the tube.  The circuitry of the ClimateLine Air tube includes a thermistor, which has a characteristic impedance.  The user manual for the AirSense 10 indicates that this device has a controller for controlling the heating of the heater wire.  The controller can automatically identify the conduit attached by using the resistance from the thermistor at room temperature to determine the type of delivery conduit attached.

52.   ResMed is aware of the '345 patent, at least in part through written communications from Fisher & Paykel Healthcare on or about February 22, 2016 notifying ResMed of its infringement of this patent.

53.   Upon information and belief, ResMed has actively induced others to infringe the '345 patent.  ResMed's acts constitute infringement of the '345 patent in violation of 35 U.S.C. § 271(b).

Upon information and belief, ResMed actively induces health-care service providers and users to directly infringe the asserted claims of the '345 patent.  By way of example only, upon information and belief, ResMed actively induces direct infringement of the '345 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of  the S10 CPAP, AirCurve 10, and ClimateLineAir products.

54.   Upon information and belief, ResMed knew or should have known that these activities would cause direct infringement.

55.   Upon information and belief, ResMed's acts constitute contributory infringement of the '345 patent in violation of 35 U.S.C. § 271(c).  Upon information and belief, ResMed contributorily infringes because, among other things, ResMed offers to sell and/or sells within the United States, and/or imports into the United States, components of the S10 CPAP, AirCurve 10, and ClimateLineAir products that constitute material parts of the invention of the

asserted claims of the '345 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by ResMed to be especially made or especially adapted for use in an infringement of the '345 patent.

56.     Upon further information and belief, such components are used by ResMed in connection with the refurbishing, servicing and/or use of infringing S10 CPAP, AirCurve 10, and ClimateLineAir products in the United States, thereby constituting direct infringement of the asserted claims of the '345 patent.

57.     Upon information and belief, ResMed's infringement of the '345 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '345 patent and its infringement thereof, thus acting in reckless disregard of Fisher & Paykel Healthcare's patent rights.

58.     As a consequence of ResMed's patent infringement of the '345 patent, Fisher & Paykel Healthcare has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

59.     Upon information and belief, unless enjoined, ResMed, and/or others acting on behalf of ResMed, will continue their infringing acts, thereby causing additional irreparable injury to Fisher & Paykel Healthcare for which there is no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,453,641)

60.     Fisher & Paykel Healthcare realleges and reincorporates the allegations set forth in paragraphs 1 through 59.

/ / /

/ / /

- 11 -

61.   Upon  information and belief, ResMed products, including at least the S10 CPAP, AirCurve 10, and ClimateLineAir products, infringe at least Claims 1 5, and 6 of the '641 patent under 35 U.S.C. § 271(a), (b), or (c).

62.   Upon information and belief, ResMed has directly infringed the asserted claims of the '641 patent through manufacture use, sale, offer for sale, and/or importation into the United States of the S10 CPAP, AirCurve 10, and ClimateLineAir products.

63.   For example, upon information and belief, the AirSense 10 with ClimateLine Air tubing includes all of the limitations of Claim 1 of the '641 patent.  The AirSense 10 is an apparatus for measuring the properties of gases being supplied to a patient.  It includes a gases supply and a tube that includes a heater wire for heating the tube.  The heater wire is located around the outside of the tube.  The tube has two ends, and the heater wire extends longitudinally along the tube from the first end to the second end of the tube.  The heater wire forms part of the circuit of the AirSense 10 device and is measured by a controller to determine properties of the gases, including temperature and/or relative humidity.  The electrical circuit has two portions, one that is located near the first end of the tube and the other that is located near the second end of the tube.   The two portions of the electrical circuit are in electrical communication with each other through a thermistor that is electrically connected to the contacts at the gases supply end of the electrical circuit.  The change in current from the thermistor is used to determine temperature of the gases as it varies.

64.   ResMed is aware of the '641 patent, at least in part through written communications from Fisher & Paykel Healthcare on or about February 22, 2016 notifying ResMed of its infringement of this patent.

/ / /

/ / /

65.     Upon information and belief, ResMed has actively induced others to infringe the '641 patent.  ResMed's acts constitute infringement of the '641 patent in violation of 35 U.S.C. § 271(b).

66.     Upon information and belief, ResMed actively induces health-care service providers and users to directly infringe the asserted claims of the '641 patent.  By way of example only, upon information and belief, ResMed actively induces direct infringement of the '641 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of  the S10 CPAP, AirCurve 10, and ClimateLineAir products.

67.     Upon information and belief, ResMed knew or should have known that these activities would cause direct infringement.

68.     Upon information and belief, ResMed's acts constitute contributory infringement of the '641 patent in violation of 35 U.S.C. § 271(c).  Upon information and belief, ResMed contributorily infringes because, among other things, ResMed offers to sell and/or sells within the United States, and/or imports into the United States, components of the S10 CPAP, AirCurve 10, and ClimateLineAir products that constitute material parts of the invention of the asserted claims of the '641 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by ResMed to be especially made or especially adapted for use in an infringement of the '641 patent.

69.     Upon further information and belief, such components are used by ResMed in connection with the refurbishing, servicing and/or use of infringing S10 CPAP, AirCurve 10, and ClimateLineAir products in the United States, thereby constituting direct infringement of the asserted claims of the '641 patent.

/ / /

70.     Upon information and belief, ResMed's infringement of the '641 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '641 patent and its infringement thereof, thus acting in reckless disregard of Fisher & Paykel Healthcare's patent rights.

71.     As a consequence of ResMed's patent infringement of the '641 patent, Fisher & Paykel Healthcare has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

72.     Upon information and belief, unless enjoined, ResMed, and/or others acting on behalf of ResMed, will continue their infringing acts, thereby causing additional irreparable injury to Fisher & Paykel Healthcare for which there is no adequate remedy at law.

## **FIFTH CLAIM FOR RELIEF**

### **(Infringement of U.S. Patent No. 9,265,902)**

73.     Fisher & Paykel Healthcare realleges and reincorporates the allegations set forth in paragraphs 1 through 72.

74.     Upon  information and belief, ResMed products, including at least the S10 CPAP, AirCurve 10, and ClimateLineAir products, infringe at least Claims 7, 11, and 12of the '902 patent under 35 U.S.C. § 271(a), (b), or (c).

75.     Upon information and belief, ResMed has directly infringed the asserted claims of the '902 patent through manufacture use, sale, offer for sale, and/or importation into the United States of the S10 CPAP, AirCurve 10, and ClimateLineAir products.

76.     For example, upon information and belief, the AirSense 10 with ClimateLine Air includes all of the limitations of Claim 7 of the '902 patent. The AirSense 10 is configured to supply a stream of gases to a patient.  It includes a gases supply, a tube configured to connect to the gases supply and to

deliver the stream of gases to the patient, and a heater wire extending through a length of the tube.   An electrical circuit connected to the wire includes a thermistor, and current flows through the thermistor and wire to a controller. Based on the current, the controller can determine at least the temperature of the gases and can adjust for patient comfort or therapeutic setting.   The thermistor is positioned within the stream of gases.   An overmolding encloses part of the electrical circuit and extends into the middle of the tube.

77.   ResMed is aware of the '902 patent, at least in part through written communications from Fisher & Paykel Healthcare on or about February 22, 2016 notifying ResMed of its infringement of this patent.

78.   Upon information and belief, ResMed has actively induced others to infringe the '902 patent.   ResMed's acts constitute infringement of the '902 patent in violation of 35 U.S.C. § 271(b).

79.   Upon information and belief, ResMed actively induces health-care service providers and users to directly infringe the asserted claims of the '902 patent.   By way of example only, upon information and belief, ResMed actively induces direct infringement of the '902 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of   the S10 CPAP, AirCurve 10, and ClimateLineAir products.

80.   Upon information and belief, ResMed knew or should have known that these activities would cause direct infringement.

81.   Upon information and belief, ResMed's acts constitute contributory infringement of the '902 patent in violation of 35 U.S.C. § 271(c).   Upon information and belief, ResMed contributorily infringes because, among other things, ResMed offers to sell and/or sells within the United States, and/or imports into the United States, components of the S S10 CPAP, AirCurve 10, and ClimateLineAir products that constitute material parts of the invention of

the asserted claims of the '902 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by ResMed to be especially made or especially adapted for use in an infringement of the '902 patent.

82.    Upon further information and belief, such components are used by ResMed in connection with the refurbishing, servicing and/or use of infringing S10 CPAP, AirCurve 10, and ClimateLineAir products in the United States, thereby constituting direct infringement of the asserted claims of the '902 patent.

83.    Upon information and belief, ResMed's infringement of the '902 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '902 patent and its infringement thereof, thus acting in reckless disregard of Fisher & Paykel Healthcare's patent rights.

84.    As a consequence of ResMed's patent infringement of the '902 patent, Fisher & Paykel Healthcare has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

85.    Upon information and belief, unless enjoined, ResMed, and/or others acting on behalf of ResMed, will continue their infringing acts, thereby causing additional irreparable injury to Fisher & Paykel Healthcare for which there is no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,550,072)

86.    Fisher & Paykel Healthcare realleges and reincorporates the allegations set forth in paragraphs 1 through 85.

/ / /

/ / /

- 16 -

87.     Upon information and belief, ResMed products, including at least the S10 CPAP and AirCurve 10 products, infringe at least Claims 6, 12, and 13 of the '072 patent under 35 U.S.C. § 271(a), (b), or (c).

88.     Upon information and belief, ResMed has directly infringed the asserted claims of the '072 patent through the manufacture, use, sale, offer for sale, and/or importation into the United States of the S10 CPAP and AirCurve 10 products.

89.     For example, upon information and belief, the AirSense 10 includes all of the limitations of Claim 6 of the '072 patent.  The AirSense 10 is an apparatus for use in humidified gases delivery treatment.  It includes a blower for generating a supply of pressurised gases.  It includes a pressurised gases outlet in fluid connection with the pressurised gases supply and adapted to make a separate fluid connection with an inlet of a water chamber to provide gases flow to the chamber.  It includes a humidified gases return adapted to make a separate fluid connection with an outlet of the water chamber in order to receive humidified gases from the water chamber, and it is adjacent to and aligned with the pressurised gases outlet.  These two fluid connections are made by a single motion.  The AirSense 10 also includes a patient outlet in fluid connection with the humidified gases return to receive humidified gases from the humidified gases return and to provide humidified gases to the patient outlet.  This patient outlet is in fluid connection with or adapted to make fluid connection with a breathing conduct for delivery of humidified gases to a patient.

90.     ResMed is aware of the '072 patent, at least in part through written communications from Fisher & Paykel Healthcare on or about October 1, 2015 notifying ResMed of its infringement of this patent.

91.     Upon information and belief, ResMed has actively induced others to infringe the '072 patent.  ResMed's acts constitute infringement of the '072 patent in violation of 35 U.S.C. § 271(b).

92.    Upon information and belief, ResMed actively induces health-care service providers and users to directly infringe the asserted claims of the '072 patent.  By way of example only, upon information and belief, ResMed actively induces direct infringement of the '072 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of S10 CPAP and AirCurve 10 products.

93.    Upon information and belief, ResMed knew or should have known that these activities would cause direct infringement.

94.    Upon information and belief, ResMed's acts constitute contributory infringement of the '072 patent in violation of 35 U.S.C. § 271(c).  Upon information and belief, ResMed contributorily infringes because, among other things, ResMed offers to sell and/or sells within the United States, and/or imports into the United States, components of S10 CPAP and AirCurve 10 products that constitute material parts of the invention of the asserted claims of the '072 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by ResMed to be especially made or especially adapted for use in an infringement of the '072 patent.

95.    Upon further information and belief, such components are used by ResMed in connection with the refurbishing, servicing and/or use of infringing S10 CPAP and AirCurve 10 products in the United States, thereby constituting direct infringement of the asserted claims of the '072 patent.

96.    Upon information and belief, ResMed's infringement of the '072 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '072 patent and its infringement thereof, thus acting in reckless disregard of Fisher & Paykel Healthcare's patent rights.

/ / /

97.   As a consequence of ResMed's patent infringement of the '072 patent, Fisher & Paykel Healthcare has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

98.   Upon information and belief, unless enjoined, ResMed, and/or others acting on behalf of ResMed, will continue their infringing acts, thereby causing additional irreparable injury to Fisher & Paykel Healthcare for which there is no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF**

**(Infringement of U.S. Patent No. 8,091,547)**

99.   Fisher & Paykel Healthcare realleges and reincorporates the allegations set forth in paragraphs 1 through 98.

100.   Upon information and belief, ResMed products, including at least the S10 CPAP and AirCurve 10 products, infringe at least Claims 24 and 25 of the '547 patent under 35 U.S.C. § 271(a), (b), or (c).

101.   Upon information and belief, ResMed has directly infringed the asserted claims of the '547 patent through the manufacture, use, sale, offer for sale, and/or importation into the United States of the S10 CPAP and AirCurve 10 products.

102.   For example, upon information and belief, the AirSense 10 includes all of the limitations of Claim 24 of the '547 patent.  The AirSense 10 is a gas humidification apparatus.  It includes a humidification chamber with a base.  It has a housing with a source gases outlet adapted to make a separable fluid connection with an inlet of the humidification chamber in order to provide gases flow into the humidification chamber.  The housing also has a humidified gases inlet adapted to make a separable fluid connection with an outlet of the humidification chamber in order to receive humidified gases from the humidification chamber.  The humidified gases outlet is in fluid communication

with the humidified gases inlet and is adapted to make fluid connection with a breathing conduit for delivery of humidified gases to a patient. The housing also includes a heater configured to vaporize liquid water in the humidification chamber to provide water vapor to gases flowing through the humidification chamber. The housing is adapted to accommodate the humidification chamber, which is removable and engageable with the housing via a single motion. The single motion of engagement disposes the base of the humidification chamber adjacent the heater. The single motion also makes or breaks the separable connection between the source gases outlet and the humidification chamber inlet and the separable connection between the humidified gases inlet and the humidification chamber outlet.

103.   ResMed is aware of the '547 patent, at least in part through written communications from Fisher & Paykel Healthcare on or about October 1, 2015 notifying ResMed of its infringement of this patent.

104.   Upon information and belief, ResMed has actively induced others to infringe the '547 patent. ResMed's acts constitute infringement of the '547 patent in violation of 35 U.S.C. § 271(b).

105.   Upon information and belief, ResMed actively induces health-care service providers and users to directly infringe the asserted claims of the '547 patent. By way of example only, upon information and belief, ResMed actively induces direct infringement of the '547 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of S10 CPAP and AirCurve 10 products.

106.   Upon information and belief, ResMed knew or should have known that these activities would cause direct infringement.

107.   Upon information and belief, ResMed's acts constitute contributory infringement of the '547 patent in violation of 35 U.S.C. § 271(c). Upon

information and belief, ResMed contributorily infringes because, among other things, ResMed offers to sell and/or sells within the United States, and/or imports into the United States, components of S10 CPAP and AirCurve 10 products that constitute material parts of the invention of the asserted claims of the '547 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by ResMed to be especially made or especially adapted for use in an infringement of the '547 patent.

108.   Upon further information and belief, such components are used by ResMed in connection with the refurbishing, servicing and/or use of infringing S10 CPAP and AirCurve 10 products in the United States, thereby constituting direct infringement of the asserted claims of the '547 patent.

109.   Upon information and belief, ResMed's infringement of the '547 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '547 patent and its infringement thereof, thus acting in reckless disregard of Fisher & Paykel Healthcare's patent rights.

110.  As a consequence of ResMed's patent infringement of the '547 patent, Fisher & Paykel Healthcare has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

111.   Upon information and belief, unless enjoined, ResMed, and/or others acting on behalf of ResMed, will continue their infringing acts, thereby causing additional irreparable injury to Fisher & Paykel Healthcare for which there is no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 7,111,624)

112.   Fisher & Paykel Healthcare realleges and reincorporates the allegations set forth in paragraphs 1 through 111.

113.   Upon information and belief, ResMed products, including at least the S10 CPAP and AirCurve 10 products, infringe at least Claims 1-3 and 7 of the '624 patent under 35 U.S.C. § 271(a), (b), or (c).

114.   Upon information and belief, ResMed has directly infringed the asserted claims of the '624 patent through the manufacture, use, sale, offer for sale, and/or importation into the United States of the S10 CPAP and AirCurve 10 products.

115.   ResMed is aware of the '624 patent, at least in part through written communications from Fisher & Paykel Healthcare on or about October 1, 2015 notifying ResMed of its infringement of this patent.

116.   For example, upon information and belief, the AirSense 10 includes all of the limitations of Claim 1 of the '624 patent.  The AirSense 10 is an apparatus for use in humidified gases delivery treatment.  It has a housing that has a pressurised gases supply within it.  A pressurised gases outlet in the housing is in fluid connection with the pressurised gases supply and is adapted to make fluid connection with an inlet of a humidifier in order to provide gases flow to the humidifier.  A humidified gases return in the housing is adapted to make fluid connection with an outlet of the humidifier in order to receive humidified gases from the humidifier. A patient outlet in the housing is in fluid connection with the humidified gases return in order to receive humidified gases and to provide humidified gases to the patient outlet.  The patient outlet is in fluid communication with or adapted to make fluid connection with a breathing conduit for delivery of humidified gases to a patient.

117.   Upon information and belief, ResMed has actively induced others to infringe the '624 patent.  ResMed's acts constitute infringement of the '624 patent in violation of 35 U.S.C. § 271(b).

118.   Upon information and belief, ResMed actively induces health-care service providers and users to directly infringe the asserted claims of the

'624 patent.  By way of example only, upon information and belief, ResMed actively induces direct infringement of the '624 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of S10 CPAP and AirCurve 10 products.

119.   Upon information and belief, ResMed knew or should have known that these activities would cause direct infringement.

120.   Upon information and belief, ResMed's acts constitute contributory infringement of the '624 patent in violation of 35 U.S.C. § 271(c).   Upon information and belief, ResMed contributorily infringes because, among other things, ResMed offers to sell and/or sells within the United States, and/or imports into the United States, components of S10 CPAP and AirCurve 10 products that constitute material parts of the invention of the asserted claims of the '624 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by ResMed to be especially made or especially adapted for use in an infringement of the '624 patent.

121.   Upon further information and belief, such components are used by ResMed in connection with the refurbishing, servicing and/or use of infringing S10 CPAP and AirCurve 10 products in the United States, thereby constituting direct infringement of the asserted claims of the '624 patent.

122.   Upon information and belief, ResMed's infringement of the '624 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '624 patent and its infringement thereof, thus acting in reckless disregard of Fisher & Paykel Healthcare's patent rights.

123.   As a consequence of ResMed's patent infringement of the '624 patent, Fisher & Paykel Healthcare has suffered and will continue to suffer

irreparable harm and injury, including monetary damages in an amount to be determined at trial.

124.   Upon information and belief, unless enjoined, ResMed, and/or others acting on behalf of ResMed, will continue their infringing acts, thereby causing additional irreparable injury to Fisher & Paykel Healthcare for which there is no adequate remedy at law.

## NINTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 6,398,197)

125.   Fisher & Paykel Healthcare realleges and reincorporates the allegations set forth in paragraphs 1 through 124.

126.   Upon information and belief, ResMed products, including at least the S10 CPAP and AirCurve 10 products, infringe at least Claim 1 of the '197 patent under 35 U.S.C. § 271(a), (b), or (c).

127.   Upon information and belief, ResMed has directly infringed the asserted claims of the '197 patent through the manufacture, use, sale, offer for sale, and/or importation into the United States of the S10 CPAP and AirCurve 10 products.

128.   For example, upon information and belief, the AirSense 10 includes all of the limitations of Claim 1 of the '197 patent.  It includes a water chamber adapted for use in conjunction with a heater base.  The water chamber has a horizontally oriented gases inlet in a wall.  There is an elongate flow tube extending into the water chamber from the inner periphery of the gases inlet, and an inlet end of the elongate flow tube covering the inlet.  An outlet end of the elongate flow tube is spaced from the wall of the water chamber.  In use, the elongate flow tube receives at the inlet end gases supplied to the gases inlet. The gases pass through the elongate flow tube and exit the flow tube at the outlet end distant from the wall.

/ / /

129.   ResMed is aware of the '197 patent, at least in part through written communications from Fisher & Paykel Healthcare on or about October 1, 2015 notifying ResMed of its infringement of this patent.

130.   Upon information and belief, ResMed has actively induced others to infringe the '197 patent.   ResMed's acts constitute infringement of the '197 patent in violation of 35 U.S.C. § 271(b).

131.   Upon information and belief, ResMed actively induces health-care service providers and users to directly infringe the asserted claims of the '197 patent.   By way of example only, upon information and belief, ResMed actively induces direct infringement of the '197 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use, refurbishing, and/or servicing of S10 CPAP and AirCurve 10 products.

132.   Upon information and belief, ResMed knew or should have known that these activities would cause direct infringement.

133.   Upon information and belief, ResMed's acts constitute contributory infringement of the '197 patent in violation of 35 U.S.C. § 271(c).   Upon information and belief, ResMed contributorily infringes because, among other things, ResMed offers to sell and/or sells within the United States, and/or imports into the United States, components of S10 CPAP and AirCurve 10 products that constitute material parts of the invention of the asserted claims of the '197 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by ResMed to be especially made or especially adapted for use in an infringement of the '197 patent.

134.   Upon further information and belief, such components are used by ResMed in connection with the refurbishing, servicing and/or use of infringing S10 CPAP and AirCurve 10 products in the United States, thereby constituting direct infringement of the asserted claims of the '197 patent.

135. Upon information and belief, ResMed's infringement of the '197 patent has been, and continues to be, willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '197 patent and its infringement thereof, thus acting in reckless disregard of Fisher & Paykel Healthcare's patent rights.

136. As a consequence of ResMed's patent infringement of the '197 patent, Fisher & Paykel Healthcare has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

137. Upon information and belief, unless enjoined, ResMed, and/or others acting on behalf of ResMed, will continue their infringing acts, thereby causing additional irreparable injury to Fisher & Paykel Healthcare for which there is no adequate remedy at law.

## VI.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Fisher & Paykel Healthcare prays for judgment and seeks relief as follows:

(1) Pursuant to 35 U.S.C. § 271, a determination that ResMed and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them have infringed each of the '807, '741, '345, '641, '902, '072, '547, '624, and '197 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271;

(2) Pursuant to 35 U.S.C. § 283, an injunction enjoining ResMed and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them from infringing the '807, '741, '345, '641, '902, '072, '547, '624, and '197 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the

other acts prohibited by 35 U.S.C. § 271, including preliminary and permanent injunctive relief;

(3)     Pursuant to 35 U.S.C. § 284, an award of compensating Fisher & Paykel Healthcare for ResMed's infringement of the '807, '741, '345, '641, '902, '072, '547, '624, and '197 patents through payment of not less than a reasonable royalty on ResMed's sales of infringing products;

(4)     Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed by the jury for ResMed's infringement of each of the '807, '741, '345, '641, '902, '072, '547, '624, and '197 patents in view of the willful and deliberate nature of the infringement;

(5)     Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional case, and an award of reasonable attorney's fees and non-taxable costs;

(6)     An assessment of prejudgment and post-judgment interest and costs against ResMed, together with an award of such interest and costs, pursuant to 35 U.S.C. § 284;

(7)     An award of taxable costs; and

(8)     That Fisher & Paykel Healthcare be granted such other and further relief as the Court deems equitable and just in the circumstances.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  August 15, 2016     By: _/s/ Sheila N. Swaroop_____

Stephen C. Jensen
Joseph F. Jennings
Sheila N. Swaroop

Attorneys for Plaintiff
FISHER & PAYKEL HEALTHCARE LIMITED

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Fisher & Paykel Healthcare Limited demands a trial by jury of all issues raised by the pleadings which are triable by jury.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  August 15, 2016        By: */s/ Sheila N. Swaroop*
                                 Stephen C. Jensen
                                 Joseph F. Jennings
                                 Sheila N. Swaroop

Attorneys for Plaintiff
FISHER & PAYKEL HEALTHCARE LIMITED

23174520